# Handley's Estate.

*Wills—Legacies—Cumulative legacies.*

Directions in a will apparently clear, but inconsistent with others equally clear must be harmonized if possible by conforming them to the general intent of the will.

Where testator gave certain legacies for charitable purposes but directed that these legacies excepting one should not be used for the purposes designated until they had doubled by accumulation of interest, and subsequently directed that income from royalties and the proceeds of the sale of mineral lands should be divided among the charities previously mentioned, the court, from a consideration of the whole will and the general intent of the testator construed the gift of the royalties and proceeds of sale as not cumulative upon the specific bequests previously given but as directory of the mode of payment.

Argued February 20, 1905.   Appeal, No. 90, Jan. T., 1904, by H. W. Palmer, John T. Richards and L. A. Watres, Executors of John Handley, deceased, from decree of O. C. Lackawanna Co., Series 692, sustaining exceptions to executor's account in Estate of John Handley, deceased.   Before MITCHELL, C. J., DEAN, BROWN, POTTER and ELKIN, JJ.   Reversed.

Exceptions to executor's account.

From the record it appeared that the House of the Good Shepherd contended, that the executors erred in including in their general administration account an item of $12,000, received from the Delaware and Hudson Company for coal leased or sold to said company, for the reason that all the income from the testator's coal, timber and mineral lands is specially bequeathed to St. Patrick's Orphan Asylum, the House of the Good Shepherd and the city of Winchester, Virginia, in the proportion of thirty-three and one third per centum to each, and is not subject to general administration expenses.

It was also contended that the executors erred in not distributing the item of $12,000 to these two institutions and the city of Winchester.

The court in an opinion by SANDO, P. J., sustained the exceptions.

*Error assigned* was the decree of the court.

*Holmes Conrad*, of Va., with him *H. W. Palmer* and *Harold A. Watres*, for appellant.—A testator's general intention is to be

deemed paramount to any adverse particular intention of his:
Jesson v. Wright, 2 Bligh, 1, 57; Roddy v. Fitzgerald, 6 H. L.
Cases, 823, 877; Goebel v. Wolf, 113 N. Y. 405 (21 N. E.
Repr. 388); Ferry's Appeal, 102 Pa. 207; Sheetz's Appeal, 82
Pa. 213; Schott's Estate, 78 Pa. 40; Doebler's Appeal, 64 Pa.
9; Yarnall's Appeal, 70 Pa. 335; Hitchcock v. Hitchcock, 35
Pa. 393; Earp's Will, 1 Parsons, 453; Middleswarth v. Black-
more, 74 Pa. 414; Jones v. Strong, 5 Kulp, 7.

*T. P. Hoban*, for appellee.—The plain and unambiguous words
of the will must prevail and cannot be controlled or qualified
by any constructions growing out of the situation, circumstances
or condition of the testator, his property or the natural objects
of his bounty: Handley's Estate, 208 Pa. 388.

OPINION BY MR. CHIEF JUSTICE MITCHELL, May 8, 1905:
By item two of his will the testator gave to St. Patrick's
Orphan Asylum of Scranton, the sum of $50,000, in trust, to
accumulate at interest until it should amount to $100,000,
after which the income should be applied to the use of the
orphans in the asylum.

By item three he gave to the House of the Good Shepherd in
Scranton $25,000 to be used and laid out for the inmates from
time to time. There was no direction to accumulate as in the
preceding bequest, but the sum bequeathed must under the
subsequent item twenty-two, be regarded as capital, and only
the income expended for the purposes named.

By item four he gave to the city of Winchester $250,000
in trust to be invested at interest until it should amount to
$500,000, and then to be devoted to the establishment of
a public library to be called the Handley Library.

By item fourteen he directed his " executors from time to time
to rent at the best rents or royalty all coal and other minerals
in and upon my lands in the states of Pennsylvania, Virginia,
West Virginia and other states, upon the same terms and con-
ditions like minerals are rented by other parties." And by the
next item fifteen he directed " that the income arising from the
royalty or rents of my said mineral lands shall be applied as
follows by my executors, namely:

" First—To pay the running expenses and public taxes.

" Second—The balance of said rents or royalty to be paid

over every six months to the directors or trustees of St. Patrick's Orphan Asylum, the House of the Good Shepherd, and the City of Winchester, Virginia, in the following proportions, namely, thirty-three and one third per cent. of such rents or royalty thereof to each."

By item eighteen he directed his executors "to pay over all money arising from the sale of land situated in Virginia, West Virginia, Pennsylvania and other States, and the timber and bark thereon, and all minerals in and under said land, to the Directors and Trustees aforesaid, and to the City of Winchester, Virginia, in the same proportions as named herein, namely thirty-three and one third per cent. of the net income." (Clearly meaning net proceeds.)

The learned court below held that the legacies in items fourteen, fifteen and eighteen of the royalties and proceeds of sale of the lands were cumulative upon those given in items two, three and four. The correctness of this construction is the substantial question in this case.

It may be conceded that taking these items by themselves, and viewing them all as bequests which prima facie they appear to be, they are presumably cumulative, but when read in connection with the other parts of the will the true construction is by no means as clear. The testator had a large estate which he disposed of by a will elaborately drawn in twenty-nine items or sections, evidently the result of much care and thought. Unfortunately, however, he did not succeed in expressing his intentions as clearly as he desired, and the result is conflict and inconsistency between some of the sections, which we must reconcile as best we may.

A careful study of the entire will leaves no doubt about the general scheme and intent of the testator. He gave a few personal bequests to his housekeeper and others, and directed his executors to continue paying the expenses of certain boys and girls that he was educating, and to give each $500 on graduation. Besides these he appears to have contemplated other bequests of similar kind to persons to be named in a schedule, which, however, was never filled up. Beyond these, the whole sum of which is comparatively insignificant in amount, he gave his entire estate to three beneficiaries in trust for four purposes: St. Patrick's Asylum, the House of the Good Shepherd, the

city of Winchester for the Handley Library, and the same city for the erection of schoolhouses for the education of the poor. No other gift is made to anybody, and the only difficulty is in ascertaining how much he meant to give to each of these four.

The testator's ideas of the successful carrying out of his benefactions were on a large scale, and considerable as his estate was, he did not regard it as sufficient for the immediate operation of his charities. He had formed a definite idea of the amounts required, and manifestly preferred adequacy in that respect to earliness of operation. Hence he gave definite amounts in items two, three and four, but required that as to the two larger of them, the active operation should be postponed until the sums named should have doubled by investment. The sum named for the House of the Good Shepherd was not directed to be accumulated, but it, like all the others, was to be treated as capital, and only the income expended, under item twenty-two. The first three benefactions were thus provided with specific sums for successful operation according to the testator's standard, the fourth was left undefined in amount by the gift of the residue. He expected it to be large, however, as is manifest from the fact that the purpose is one requiring a substantial amount, and from the fact as already adverted to that adequacy of amount for the prescribed purpose was in his view a prime requisite.

With this indisputable view of the testator's general intent, we take up the different sections of the will relating to the mode of carrying it out.

It is notable that the personal property, though it turned out to be considerable in fact, does not appear to have been regarded by the testator as an important element. The only reference to it is the direction in item ten that it should be sold at private sale with no directions as to the proceeds. And in item nineteen his executors are directed to apply his life insurance to the payment of debts of record against his real estate.

The estate, though large, was not regarded by the testator as sufficient, or at least in condition for the immediate operation of his scheme. Whether it was heavily incumbered, as the provision for the application of his life insurance might indicate, or whether there was uncertainty of some kind about it, such as the failure of his titles to the lands in West Virginia, does

not appear. But that he did not consider it available for immediate distribution is manifest all through the instrument. By item twenty-five he directed that "the total income obtained from my estate, real, personal or mixed, shall be accumulated for the period of two years from the date of my death." No exception is made anywhere in the will in favor of earlier payment of any legacy, except that of $5,000 to Annie Mayberry, which is to be paid "within two years," and the annuity to his housekeeper, which under the general rule may be fairly implied as commencing from his death. By item eleven his executors were to "retain at rent for the period of twenty years" his real estate in Scranton; by item thirteen they are to sell his real estate at the end of twenty years; by item fourteen they are to rent upon royalties, etc., all the coal and other minerals in his lands; and by item seventeen they are to lease the surface of his farm and mineral lands, and "also to lease the minerals on said lands for the period of twenty years." These are the testator's directions as to the course of administration of his estate, covering in specific detail every source of assets, and plainly indicating a period of twenty years as requisite for the purpose to be accomplished in full.

Turning now to the directions for distribution we find them equally detailed and specific, but unfortunately not equally clear and consistent. Item twelve is, "I order and direct that all incomes and profits growing out of my said real estate, no matter where situated, after paying charges, life estate, repairs and taxes and insurance, shall be laid out and expended in paying in part, or in whole, the several bequests provided for and mentioned in this, my will."

Item fourteen is, "I hereby order and direct my executors from time to time to rent at the best rents or royalty, all coal and other minerals, in and upon my lands, in the states of Pennsylvania, Virginia, West Virginia and other states, upon the same terms and conditions like minerals are rented by other parties:" and

Item fifteen is, "I order and direct that the income arising from the royalty or rents of my said mineral lands shall be applied as follows by my executors, namely,

"First. To pay the running expenses and public taxes.

"Second. The balance of said rents or royalty to be paid

over every six months to the directors or trustees of St. Patrick's Orphan Asylum, the House of the Good Shepherd and to the City of Winchester, Virginia, in the following proportions: namely, thirty-three and one-third per cent. of such rents or royalty thereof to each."

Item eighteen is, "I direct and order my executors to pay over all money arising from the sale of land situated in Virginia, West Virginia, Pennsylvania and other states, and the timber and bark thereon, and all minerals in and under said land to the directors and trustees aforesaid, and to the city of Winchester, Virginia, aforesaid, in the same proportions as named herein, namely, thirty-three and one-third per cent. of the net income." Item twenty-five is, "I hereby order and direct my executors, unless where otherwise specially ordered, to pay the said persons, corporations and city of Winchester, Virginia, the said several sums of money bequeathed, devised and given by me in the manner following, namely:

"The total income obtained from my estate, real, personal or mixed, shall be accumulated for the period of two years from the date of my death, and after paying of all just debts, taxes, insurance and other charges for the preceding year, the balance remaining shall be divided by my executors pro rata among the several persons, corporations and the city of Winchester, Virginia, named in my will, in proportion to the amount bequeathed and devised to each, and so continue to pay from year to year, on the first days of January in each year, until each and every bequest is paid in full by my executors and their successors."

Here we meet the first and only serious difficulty in the case. Items fourteen, fifteen and eighteen on one hand are repugnant to items twelve and twenty-five on the other. Item twelve is as broad as language can make it, "all incomes and profits growing out of my said real estate no matter where situated" are to be used to pay the several bequests. Incomes and profits, coupled with directions to rent and sell, clearly include proceeds of sales as well as rents in the meantime, and especially in view of the testator's use of the word income in item eighteen plainly meaning proceeds. Item twenty-five is equally comprehensive as to income, "the total income obtained from my estate, real, personal or mixed," is to be divided "among the several persons, corporations and the city of

Winchester named in the will." The direction in this item, it is true, is subject to the words, "unless where otherwise specially ordered." In items fifteen and eighteen the payments are certainly otherwise specially ordered, for the moneys arising under those items are to be paid to the three legatees named in equal amounts, while under item twenty-five the payments are to be made to all the legatees, "the several persons or corporations, and the city of Winchester" in proportion to the amount bequeathed to each. But even giving the most extended meaning claimed by appellee to the phrase "otherwise specially ordered," we still have item twelve with its broad and peremptory direction to use "all incomes and profits growing out of my real estate no matter where situated" in payment of all legacies alike. The repugnance on the face of the items is manifest and unavoidable. Is it vital to the substance of the bequests, or is it directory as to mode of payment? Do items fourteen, fifteen and eighteen give new and cumulative legacies to the three legatees named, which override the inconsistent provisions of items twelve and twenty-five? The court below so held. We are not able to concur in this view.

There is no clear gift of a second legacy in items fifteen and eighteen. The language is entirely consistent with such second gift, but equally so with a direction as to the mode of payment of the first, and the rest of the will is far more in harmony with the latter construction. As already said, the testator had in mind a standard of the amount of capital necessary for the commencement of the active administration of his charities, and accordingly directed in the case of St. Patrick's Asylum and the Handley Library that the funds respectively given should be "retained and invested at interest until the same" should double in amount, which meant a postponement of the active operation of those charities for a period approximating the twenty years which he allowed for the full administration of his estate. It does not seem probable that if he had contemplated large additional sums coming to those institutions under cumulative legacies in items fifteen and eighteen he would have postponed the time of activity to the slow duplication of the original capital by interest. Moreover we must assume that the different sums given to the three institutions were fixed in the testator's mind by their different requirements. Yet if the view of

cumulative legacies be adopted we are driven to suppose not only that the original $25,000 given to the House of the Good Shepherd directly and explicitly in item three was small in comparison with his whole intended gift to that institution by the indirect and doubtful language of items fifteen and eighteen, but also that by the equal division of the royalties and proceeds of sales of land, the House of the Good Shepherd should have its legacy increased in twice the ratio of St. Patrick's Asylum, and ten times the ratio of the Handley Library. Such a result is at variance with the whole scheme of the will. It is far more consistent with that scheme to consider items fifteen and eighteen as directory of the mode of payment of the legacies in items two and three in which the funds were to await the process of duplication by investment and in which therefore the payment of the initial sum at the earliest available date was important.

The residuary bequest to the city of Winchester was of course undefined in amount, but as already said it is plain that the testator intended it to be large. It is not consistent with such intent that he should have diverted from it substantially all the assets of his estate capable of producing an adequate basis of capital for his scheme of public schoolhouses for the education of the poor. In this respect also the construction of cumulative legacies in items fifteen and eighteen is contrary to the clear and unquestionable general intent of the testator.

The will as already said is elaborately drawn and its provisions in some particulars inconsistent. Probably no construction could be given which would be free from argumentative objections. But considered as a whole, with a view to the general intent, it is reasonably clear. Abridged and put into order it comes to this :

First, except a few legacies of insignificant amount, the estate is given to three beneficiaries upon four trusts, to St. Patrick's Orphan Asylum, $50,000 ; to the House of the Good Shepherd, $25,000 ; to the city of Winchester, $250,000 for the Handley Library ; and to the city of Winchester, the residue for the erection of schoolhouses for the education of the poor. There are no other gifts, articles fourteen, fifteen and eighteen being directions for the mode of payment of the legacies already named.

Secondly, under items twelve and twenty-five the general income of the estate to be accumulated for two years and then applied pro rata to all the legacies in proportion to their amounts.

Thirdly, the special income from royalties from coal and mineral lands, and the proceeds of the sale of such lands to be applied equally, one third to each, in payment of the legacies to St. Patrick's Asylum, the House of the Good Shepherd and the city of Winchester for the Handley Library.

Fourthly, after the payment of the definite legacies, and during the remainder of the twenty years before final distribution, the net income from all sources will fall into the residue.

Fifthly, the directions for investment and expenditure in various items, particularly twenty-one, twenty-two and twenty-three are not for the executors but are addressed to the legatees as conditions of the trust upon which the legacies are given.

Decree reversed and account directed to be settled in accordance with this opinion.